The Illinois Federal Court Third Division is now in session. The Honorable Justice Jesse G. Reyes is presiding. Morning, everyone. Morning, everyone. All right, you got a seat. People v. Scott. All right, would counsels who are going to argue this matter please approach the podium. Good morning, Your Honors. Assistant State's Attorney Kaitlin Schnew on behalf of the people. Okay, counsel. My name is Daniel Mellon. I'm with the State Appellate Defender's Office on behalf of Mr. Scott. Okay, all right, hold on before you step away. All right, so just as a reminder, the microphone doesn't amplify, so please speak into the microphone. It's only for recording purposes. Fifteen minutes apiece. Time for rebuttal? Three minutes. Three minutes, okay. All right, thank you. All right, counsel, you ready to proceed? Yes, thank you, Your Honor. Again, my name is Daniel Mellon. May it please the Court, I'm with the State Appellate Defender's Office Counsel. I represent the petitioner, Mr. Dennis Scott. Before we proceed, let me ask a question. With regards to the case of People v. Clark and People v. Moore, hasn't this issue already been resolved by the Illinois Supreme Court? We acknowledge People v. Moore, especially, that dealt with emerging adult cases. However, as we note in the briefs, we believe that case is distinguishable. Which one, Moore or Clark? Moore. Moore, Your Honor. Okay. Because in Moore, I believe it's paragraph 42, they specifically stated that the evidence and arguments raised at the sentencing hearings for both those defendants showed that the parties knew Illinois law recognized the special status of young adults, especially those subject to adverse influences for purposes of applying the principles of the proportionate penalties clause. It's our position that that case is distinguishable and not necessarily controlling here because there was nothing in this record establishing that my client was aware of the special status of young adults. Notably, my client was 21 years old when these offenses occurred. He was sentenced to 67 years in prison. And another reason this is distinguishable is due to his learning disabilities, he was the functional equivalent of an 11-year-old. Evidence was presented at the death penalty hearing establishing his low IQ. So we are asking for just very narrow relief. We're not asking for a broad rule. So what is the relief you're seeking? That he should be allowed second-stage proceedings, reverse denial of his leave to file his successful petition. So he can be appointed an attorney and just have the opportunity to further develop a record establishing why his sentence is unconstitutional just applied to him. So Moore didn't actually extend Miller to adults with mental or intellectual disabilities, did it? No. No, Your Honor. Moore dealt with emerging adult. Clark dealt with intellectual disability. Isn't this case actually similar to Clark? Well, that was an intellectually disabled defendant. And so we're not, Mr. Scott is not raising his claim as an intellectually disabled. He's challenging his sentence based on the evolving law surrounding young adults. So it would fall more under the Moore-Miller analysis rather than the Clark analysis? Correct. Correct, Your Honor. So are you claiming or you're not claiming that he has intellectual limitations? The evidence showed at the sentencing hearing, at the death penalty hearing, that there was a psychologist testified that he was borderline intellectually disabled, but he has the cognitive ability of an 11-year-old. So it's our position that due to his low IQ, it's not necessarily an intellectual disability claim, but considering his specific facts and circumstances, his young age combined with his learning disabilities, we believe he should be granted just the opportunity to go to second stage proceedings and appointed an attorney. So just to be clear, are you saying that he's intellectually disabled? No. He conceded in previous proceedings that he's not intellectually disabled per se, but he does have, there was testimony showing that he has very low IQ. Okay. And then with regards to your brief, you indicated there's no difference between mandatory and discretionary life sentence. But doesn't people versus Hillard actually affect your position here? Correct. But it's our position that once we establish that he's the functional equivalent of a juvenile,  and we know that juveniles, it just applies to discretionary life sentences. So juvenile, there's like a brain development where they presumably progress to becoming more mature and have the capability eventually of understanding fully the consequences of anything that they do. Whereas somebody with an intellectual disability can never progress that far. Or not never, but it's not the regular progression of the traditional juveniles or young adults that are analyzed under the case law. Correct. Yes, ma'am. But I don't think there's anything in this record that suggests that my client is incapable of rehabilitation. He is or is not? I'm sorry. He's capable of rehabilitation. I don't think anything in the record suggests that my client cannot mature, grow. Yes, he has a low IQ. But he was just 21 years old. And we believe, and again, we're just asking for very narrow relief. All we're asking is to go to second stage proceedings, appoint an attorney. I'm sorry. So why do you base this fact that you think that he could be rehabilitated? I mean, has there been tests done to him while he's been incarcerated or any kind of examinations or? No, Your Honor. There's nothing in this record. But that's why we're just asking for the opportunity to be appointed an attorney and have a trial judge consider all the relevant factors that come with his young age combined with his intellectual disability. But wasn't all the evidence regarding this issue brought before the trial judge? And it wasn't, is it, because in fact you cite to the doctor in the record and also in your briefs. So this was all presented to the trial judge. The trial judge considered it but found that there wasn't anything there. Well, I don't believe. We're going through a second stage. What is that going to establish? The Miller framework didn't exist at the initial trial, at the initial sentencing hearing. So we would be asking just ultimately get a new sentencing hearing where a trial judge can give meaningful consideration to the Miller factors and how it applies to my client. But none of this is new evidence, right? You would agree, right? Correct. Yes, Your Honor. Okay. You can continue. Anything else? No, Your Honors. Again, we would just submit this case for your consideration and thank you very much. Okay. One last question, though. Sure. People versus Cody. Yes. So even if we say, okay, Supreme Court decisions are not applicable, what about people versus Cody? Well, people versus Cody, I think that was a broad rule. In people versus Cody, this court held that all intellectually disabled defendants are entitled to Miller protections. And then it went up to the Illinois Supreme Court and they reversed and said no. But what we're asking is just very narrow relief. We're not asking for a broad rule in this case. We're just asking for this court to respectfully hold that just as applied to my client, Mr. Scott, he should be entitled to file his successive petition.  All right. Thank you. In the Cody case, the defendant was not successful in converting his mental disabilities into youthful-like characteristics. Correct. Yes, Your Honor. Which is okay. Yes. That was prohibited. Yeah. Thank you very much. State. Good morning again, Your Honors. May it please the Court. So what's your position on the impact of the Supreme Court decisions on this case? So to reiterate the cause and prejudice test, which is at issue here with the denial of relief to file a successive post-conviction petition, petitioner has to establish cause for failing to raise the claim in his initial post-conviction petition, which was filed in 2007. Our position is that Moore, which came down after petitioner filed his opening brief and prior to the people filing theirs, explicitly held that Miller and his progeny do not provide cause to raise an emerging adult claim under the proportionate penalties clause. This is a full stop. There is no condition. There is no test. It is if this is the claim raised, this is the posture we're at with the successive post-conviction petition. You cannot raise this claim. And the Supreme Court in Moore based its reasoning on its prior decisions in Dorsey and Clark and explained that at the time they filed their initial petitions, both petitioners in Moore had the essential legal tools. This was a claim they could have raised in their initial petitions, both of which were filed before the petitioner filed his in this case. But what about their argument that Moore wasn't in existence at the time? So how can we? Miller wasn't in existence. Miller, right. I'm sorry, Miller. Yes. So Moore explained, as did Dorsey and Clark with respect to those specific claims, Moore explicitly explained that Miller did not change the law applicable to young adult sentencing. So there is not a new claim that could be raised now. So if Miller had been around at the time of sentencing and its subsequent cases, it would not have created a new claim for a petitioner in this case who was 21 years old when he committed the offenses at issue. So it appears in the record that all this evidence with regards to the limitation that he has intellectually was presented to the trial court. So what is new that's going to be presented here that maybe we're not aware of that might not have been in the record? There is nothing that I am aware of, Your Honor. I do know that in their reply brief, petitioner says that this case is distinguishable from Moore because in this case, the trial court and defense counsel did not discuss the developing brain of young adults or that there is lessened culpability and greater potential for rehabilitation with youthful offenders. I do want to point out that there is nothing in the Moore opinion that discusses any arguments made by trial counsel or the trial court at either sentencing, aside from the trial court at one sentencing, noting the heinous and brutal nature of the offenses. So petitioners attempting to distinguish Moore from this case based on a lack of factors that Moore does not contain. So he was barely, when this occurred, he was barely 21. I think he was about 21 and a couple months or something. So shouldn't we take that into account? Yes, of course. That comes into consideration and it was codified in statutory mitigating considerations that the trial court took into account at sentencing. Sentencing was very lengthy. There were a lot of mitigation witnesses that testified regarding defendant's intellectual learning disability in school. And his mother testified regarding that diagnosis in the first grade. There was a doctor who testified. The trial court noted over and over prior to sentencing that it was, it had considered every single factor in aggravation and mitigation and all of the evidence provided and noted specifically that it did consider petitioner's history and character prior to sentencing. And that is why, I mean, petitioner was eligible for the death penalty at this time. This would now translate to eligibility for an extended sentence of natural life. Instead, petitioner received an aggregate sentence of 67 years. This shows the trial court's careful consideration of all of the mitigation presented, which included petitioner's age. And isn't this the second or third post-conviction act, successive petition and post-conviction act? Yes, Your Honor. This is the third successive post-conviction petition. And this could easily have been raised previously or was, correct? Yes, Your Honor. This was raised on direct appeal. Obviously not under Miller. It was prior to Miller. But the trial court failed to consider age, rehabilitative potential, and intellectual disability. And this court rejected that on direct appeal very explicitly. So how do you respond to the claims that all of this evidence was presented to the trial court and then basically there was a police indication that his intellectual limitations made him the equivalent of maybe a juvenile or a young adult that shouldn't have been tried as an adult? Your Honor, at the time, the testimony was, I believe, that his academic achievement level was that an 11-year-old. That does not mean that he functioned entirely as an 11-year-old child. This was academic achievement. His IQ was on the low to borderline range. But it was higher than the defendant in Clark, where this court rejected the same claim raised here. And I do want to note that Petitioner does distinguish Clark on the basis that Clark involved an intellectually disabled Petitioner claim and not emerging adult. But actually Clark involved both types of claims, and both were rejected for the same reasons. Okay. Anything else? I know, Your Honor. I would just ask that I stand on our briefs with respect to prejudice, and I would ask that this court affirm the denial of Petitioner's motion for leave to file a third successive post-conviction petition. Thank you. Thank you. Rebuttal? I think I just want to emphasize that what is new, while there's not necessarily new evidence presented at this point, the legal framework has changed. And from the – he filed his – he was – the offenses occurred in 2001. 2004 was the direct appeal. 2007 was his first petition. 2013 was his first successive PC. 2017 was the second successive PC. And 2021 was the instant petition. Across that period of time, the law has evolved, and it's meaningful. Courts need to give meaningful consideration to the Miller factors. And, again, my client, he – functional equivalent of an 11-year-old. And if you look to the facts of this offense, this didn't seem to be a premeditated incident. It had the hallmarks of youth. It was impulsive. And, again, we're just asking for very narrow relief. All we're asking is give him the opportunity to advance to second stage proceedings just to file a petition. So you say it was impulsive, but yet at the same time this was an incident that carried on beyond the first blow. Correct. Yes, Your Honor. But based on this record, it didn't seem that he was looking to commit a murder in this case. He was surprised. He was just going to commit a theft. And he was surprised, and he acted impulsive. And this all should be considered by a trial judge in determining whether or not he should serve a life sentence. Thank you. Thank you. Thank you very much. Any other questions? All right. Thank you to both counsels for a well-argued matter and presenting us with a very interesting issue. This court will take it under advisement, and we'll take a short recess for the next case to set up.